UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Marc Johnson & Sallie Johnson, | ) |
| Plaintiffs, | ) Civil Action No. 2:22-cv-00217-BHH |
| v. | ) **Opinion and Order** |
| United States of America, | ) |
| Defendant. | ) |

This case arises from the Internal Revenue Services' denial of Plaintiffs Marc and Sallie Johnson's ("Plaintiffs") refund claims for tax years 2012 and 2014 under 26 U.S.C. § 7422. On December 23, 2022, Plaintiffs moved for summary judgment on the grounds that there is no genuine dispute of material fact that their refund claims for these tax years satisfy the theft loss requirements of § 165 of the Internal Revenue Code. The United States of America ("Defendant" or "United States") filed a response in opposition on January 6, 2023, to which Plaintiffs filed a reply. Also on December 23, 2022, the United States filed a cross-motion for summary judgment, arguing that Plaintiffs were not defrauded and that no theft occurred entitling them to claim a theft loss deduction under § 165. Plaintiffs filed a response in opposition on January 6, 2023, to which the United States filed a reply. The sole issue before the Court is whether Plaintiffs are entitled to a theft loss deduction for tax years 2012 and 2015 under § 165. For the reasons set forth herein, the Court denies Plaintiffs' motion for summary judgment and grants Defendant's cross-motion for summary judgment with respect to Plaintiffs' claim that they have suffered a theft loss under § 165 of the Internal Revenue Code.

## BACKGROUND

The following facts are undisputed and are gleaned from Plaintiffs' Concise Statement of Undisputed Facts and the deposition testimony of Plaintiff Marc Johnson ("Mr. Johnson").

Mr. Johnson began investing in the real estate acquisition, development, and sales activities of John D. Harrison, Jr. ("Mr. Harrison") in 2001 and continued through approximately the end of 2011. (ECF No. 29-1 at 3.) Mr. Harrison's father was the doctor who delivered Mr. Johnson, and Mr. Harrison and Mr. Johnson became friends when they were teenagers. (*Id.*)

Mr. Johnson obtained degrees in banking and finance from the University of South Carolina. (ECF No. 27-3 at 10:18-24.) After college, Mr. Johnson began his career with Bankers Trust of South Carolina holding various positions such as consumer and commercial loan officer and regional executive. (*Id.* at 11:8-12:7.) In 2002, Mr. Johnson began working with First Citizens Bank of South Carolina as a senior credit officer. (*Id.* at 13:1-11.) In this role, he approved commercial lending loan applications, which involved assessing the character of the borrower and the applicant's financial ability to repay a loan, and he oversaw loan officers who completed these tasks. (*Id.* at 13:12-15:14.)

Mr. Johnson and Mr. Harrison developed a business relationship; as Mr. Johnson explained: "I had money I wanted to invest, and he had expertise in real estate development and construction." (*Id.* at 18:14-20.) Mr. Johnson's initial business involvement with Mr. Harrison began with two secured transactions involving property on or around Lake Chatuge, Georgia, and Lake Greenwood, South Carolina. (ECF No. 29-1 at 3.) Based on the success of these transactions, Mr. Harrison's reputation as a

successful real estate professional, and their personal relationship, Mr. Johnson decided to invest additional monies with Mr. Harrison. (*Id.* at 12.)

Specifically, Mr. Johnson invested generally in Mr. Harrison's real estate activities through two negotiated, unsecured promissory notes (hereinafter "loans" or "loans at issue") in the amounts of $340,000.00 and $500,000.00. (*Id.* at 4; ECF No. 29-5.)

On November 10, 2015, Mr. Harrison was indicted under 18 U.S.C. § 1344 and § 1349, and on May 10, 2016, Mr. Harrison pled guilty to federal bank fraud under 18 U.S.C. § 1344. (ECF No. 29-1 at 5.)

Thereafter, Plaintiffs, in reliance on their tax professionals, corrected the treatment[1] of their losses from Mr. Johnson's investments with Mr. Harrison and reported a theft loss and claimed two refunds from the IRS. (*Id.* at 7-8.) Specifically, on or about September 18, 2018, the IRS received Plaintiffs' 2015 Form 1040X and 2012 Form 1040X that claimed refunds in the amounts of $80,075.00 and $97,726.00, respectively. (*Id.* at 34.) After an examination of Plaintiffs' individual income tax returns for tax years 2012 and 2015, the IRS disallowed in full Plaintiffs' refund claims for these two years. (ECF No. 29-1 at 8; ECF No. 1-1 at 2 ("The loss does not qualify as a "Ponzi" scheme or theft loss.").) This litigation ensued.

**STANDARD OF REVIEW**

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

[1] In reliance on their tax professionals, Plaintiffs had treated and reported the $840,000.00 loss as a short-term capital loss carryover in the amount of $802.812.00 on Schedule D attached to Plaintiffs' 2012 Form 1040; and had treated and reported the $840,000.00 loss as a short-term capital loss carryover in the amount of $602,766.00 on Schedule D attached to Plaintiffs' 2015 Form 1040. (ECF No. 29-1 at 6.)

3

P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. *Id.* at 255. "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2011).

## **BURDEN OF PROOF**

In a refund suit, the plaintiff has the burden of proof. "[I]n a suit to recover [taxes paid] the burden rests upon the taxpayer to prove all the facts necessary to establish the illegality of the collection." *Niles Bernent Pond Co. v. U. S.*, 281 U.S. 357, 361 (1930); *see also Welch v. Helvering*, 290 U.S. 111, 115 (1933). In a civil action for refund, the taxpayer bears the burden of proof by a preponderance of the evidence to show that there was in fact a deductible loss. *See Boehm v. Comm'r*, 326 U.S. 287, 294 (1945) *reh'g denied*, 326 U.S. 811 (1946). The taxpayer also bears the burden of proving the allowable amount

4

of the claimed loss deduction. *Amey & Monge, Inc. v. Comm'r*, 808 F.2d 758, 761 (11th Cir. 1987). Finally, the taxpayer bears the burden of showing there is a clear statutory provision providing for the tax deduction(s) claimed. *See INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992) (noting the "familiar rule" that "an income tax deduction is a matter of legislative grace" (citing *Interstate Transit Lines v. Comm'r*, 319 U.S. 590, 593 (1943))).

## DISCUSSION

### PLAINTIFFS' ENTITLEMENT TO A THEFT LOSS DEDUCTION UNDER THE GENERAL THEFT LOSS PROVISIONS OF THE INTERNAL REVENUE CODE

Title 26, United States Code, § 165(a) allows taxpayers to deduct any loss sustained during the taxable year that is not compensated for by insurance or otherwise. Section 165(c)(3), which limits losses for individuals, allows individual taxpayers to deduct from their taxable income losses arising from theft crimes, including but not limited to "larceny, embezzlement, and robbery." Treas. Reg. § 1.165-8(d) (interpreting 26 U.S.C. § 165(c)(3)). To claim a theft loss deduction, a taxpayer must prove the existence of a theft, the amount of the deductible loss, and the year in which the loss was discovered. *See* 26 U.S.C. § 165(c); 26 C.F.R. §§ 1.165-1(d)(3), 1.165-8. As used in § 165, "'theft' is 'a word of general and broad connotation, intending to cover . . . any criminal appropriation of another's property to the use of the taker, particularly including theft by swindling, false pretenses, and other forms of guile.'" *Greenberger v. U.S.*, No. 1:14-cv-01041, 2015 WL 4076976, *4 (N.D. Ohio June 19, 2015). The question of whether a theft has occurred for purposes of § 165 is determined based on the law of the jurisdiction where the theft took place. *Edwards v. Bromberg*, 232 F.2d 107, 111 (5th Cir. 1956). The taxpayer bears the burden of proving by a preponderance of evidence that a theft actually occurred. *Jones v. Comm'r*, 24 T.C. 525, 527 (1955).

5

**Whether a theft occurred under South Carolina law**

Under South Carolina law, theft by false pretenses occurs where "[a] person who by false pretense or representation obtains . . . from another person any chattel, money, valuable security, or other property, real or personal, with intent to cheat and defraud a person of that property . . . ." S.C. Code Ann. § 16-13-240. The parties disagree about whether genuine disputes of material fact exist regarding the elements of theft by false pretenses.

The United States claims it is entitled to summary judgment because Plaintiffs have not put forth evidence showing Mr. Harrison made a fraudulent misrepresentation to Mr. Johnson to induce Mr. Johnson to make the two loans at issue. (ECF No. 27 at 8; ECF No. 31 at 11-14; ECF No. 36 at 9-12.) Quite the contrary, the United States argues that the record shows Mr. Harrison and Mr. Johnson: had and continue to have, despite his plea, a close relationship that began when they were both teenagers; had engaged in two prior business dealings together wherein Mr. Johnson provided $4.2 million in funding (through loans he obtained through Carolina First Bank) to support two of Mr. Harrison's real estate development projects; and, with regard to the two loans at issue, had negotiated the terms of the loans, to include charging Mr. Harrison high interest rates, suggesting that Mr. Johnson knew the loans were risky. (ECF No. 27 at 2-5; ECF No. 31 at 5; ECF No. 36 at 2-5, 11.) Thus, according to the United States, "Mr. Johnson's decision to lend Harrison money in 2005 and 2006 was simply the next step in an ongoing business relationship." (ECF No. 36 at 4.)

6

While not alleged in the Complaint,[2] Plaintiffs allege in their motion for summary judgment that they have shown a theft by false pretenses under S.C. Code Ann § 16-13-240 as a matter of law. (ECF No. 29-1 at 13.) In so arguing, they first assert that Mr. Harrison's plea to bank fraud under 18 U.S.C. § 1344 establishes by a preponderance of the evidence that they lost their investment to Mr. Harrison by false pretenses under South Carolina law. (*Id.* at 13-15.) On the other hand, the United States asserts that Plaintiffs are not entitled to a theft loss deduction because, while there is no question Mr. Harrison engaged in and participated in a mortgage fraud scheme, there is no evidence Mr. Harrison committed a theft of Mr. Johnson's property. (ECF No. 27 at 8.) The United States submits that Mr. Harrison's real estate business was a legitimate business that failed because the financial crisis devasted the mortgage industry. (*Id.* at 5, 7.) Plaintiffs were victims of a failed investment not a theft, the United States contends, and should not be allowed to claim the wrong tax treatment for their loss. The United States asserts that Plaintiffs have put forth no evidence to show that the two loans at issue were made based upon Mr. Johnson's reliance on false financial statements provided to him by Mr. Harrison. (ECF No. 36 at 5-7.) Thus, according to the United States, while Mr. Harrison may not have been able to pay back the loans at issue, in part, because he committed mortgage fraud, there is no evidence Mr. Harrison intended to defraud the Johnsons or otherwise commit a crime against them. (*Id.* ("Harrison's fraud on banks does not show he defrauded *the Johnsons*.") (emphasis in original).) As explained below, the Court finds

---

[2] The Complaint alleges a claim for refund based upon safe harbor treatment under Revenue Procedure 2009-20. (ECF No. 1 at 10-15.) However, Plaintiffs have moved for summary judgment solely on their argument that no genuine issues of material fact exist with regard to whether they suffered a theft loss within the meaning of § 165 of the Internal Revenue Code. (*See* ECF No. 29-1 at 2-3 ("The Johnsons through its motion and memorandum are not seeking the benefit of the Revenue Procedure because there is no genuine issue of material fact that the Johnson's claims for tax years 2012 and 2015 satisfy the theft loss requirements of Section 165 of the Code.").)

7

that Mr. Harrison's guilty plea to bank fraud under 18 U.S.C. § 1344 does not establish as a matter of law that Plaintiffs suffered a theft loss meeting the elements of theft by false pretenses under South Carolina law.

Because their burden requires a showing by a preponderance of evidence that Mr. Harrison made a deliberate false statement or representation to induce them to make the loans, Plaintiffs claim that Mr. Harrison's assertion of the Fifth Amendment when asked whether he provided, or whether Mr. Johnson relied on false or fraudulent financial statements "leads to an adverse inference, making it presumptively true that Mr. Harrison provided false financial documents to Mr. Johnson . . . to obtain funds . . . ." (ECF No. 29-1 at 16.) After consideration, however, the Court declines to draw an adverse inference based on Mr. Harrison's Fifth Amendment invocation where, as shown below, there is not only tenuous circumstantial evidence[3] to support such a finding but, in fact, Plaintiffs' own testimony does not lend credence to this assertion. *See, e.g., Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) ("[A]dverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer.")[4]

Plaintiffs next rely on the testimony of certified public accountant Charles Schulze, who analyzed financial statements for Mr. Harrison's real estate activities and served as

---

[3] For example, Plaintiffs rely on records from Mr. Harrison's criminal case demonstrating that Mr. Harrison "provided fictious financial documents to third parties." (ECF No. 29-1 at 16-17.)  While such evidence certainly "underscore[s] the federal criminal bank fraud case against Mr. Harrison" and speaks to Mr. Harrison's character and business conduct, it does not show that Mr. Harrison provided false financial documents to Mr. Johnson to induce Mr. Johnson into making the two loans at issue. (ECF No. 29-1 at 16-17.) And, while the Court has properly considered this indirect evidence, the question at issue can be answered by direct evidence, namely, Plaintiffs' own statements, which show that no theft by false pretenses occurred regarding the loans at issue.

[4] Given this holding, the Court need not examine the *LiButti* factors to determine whether an adverse inference against the United States is appropriate based on the silence of Mr. Harrison, a non-party. *LiButti v. U. S.*, 107 F.3d 110, 121 (2d Cir. 1997).

8

a "key investigator into Mr. Harrison['s] . . . conduct with respect to Mr. Harrison's defrauding of Countybank Greenwood, South Carolina. (ECF No. 29-1 at 17-18.) Mr. Schultze testified that he reviewed both false and accurate financial statements of Mr. Harrison and that his clients had received financial statements and both lost their investments in Mr. Harrison's business. (ECF No. 29-1 at 17; ECF No. 29-8 at 9:7-12:22; 39:25-40:11.)

Notably, Mr. Schultze has no personal knowledge regarding what financial documents, if any, were provided by Mr. Harrison directly to Mr. Johnson prior to or at the time Mr. Johnson made the loans at issue, let alone whether such financial statements were deceptive or misleading. Moreover, Mr. Schultze did not review Mr. Johnson's transactions regarding the Lake Chatuge loan and the Lake Greenwood loan to Mr. Harrison, nor does Mr. Schultze know the originating event that caused Mr. Johnson to provide the loans at issue to Mr. Harrison. (ECF No. 29-8 at 27:3-25; 28:4.) Thus, even assuming *arguendo* that such evidence is admissible,[5] the testimony of Mr. Schultze still fails to establish that Mr. Harrison showed Mr. Johnson false financial information to induce Mr. Johnson into make the loans at issue. *Cf. Smith v. United States*, 2021 WL 5712154, at *6 (S.D. Fl. Oct. 14, 2021) (finding plaintiff raised sufficient disputes of material fact where, among other evidence, he introduced evidence through the testimony of an accountant that financial statements provided to Mr. Smith were deceptive and misleading).

As alluded to above, most detrimental to Plaintiffs' refund claim is Mr. Johnson's own testimony. He does not affirmatively assert that Mr. Harrison provided him with

---

[5] The United States raises various objections to the admissibility of Mr. Schultze's testimony. (*See* ECF No. 31 at 2-4.)

9

misleading (or accurate) financial statements to induce him into making the loans at issue. (*See* ECF No. 27-2 at 94:3-7 (testifying "I don't recall that" when asked about his due diligence performed, including reviewing Mr. Harrison's financials, prior to making the loans in question).)[6]  Rather, Mr. Johnson asserts that it was the "returns" he received from the two prior business dealings (i.e. Lake Chatuge and Lake Greenwood) with Mr. Harrison that "led [him] to enter into the two unsecured investments in the form [of] Notes that form the basis of the Johnsons' refund claims." (ECF No. 29-1 at 15; *see also* i*d.* at 12 ("Based on the success of these transactions . . . Mr. Johnson decided to invest additional monies with Mr. Harrison on an unsecured basis (i.e., the Notes) (Undisputed Facts ¶¶ 6, 9-11).")). Mr. Johnson states he also made these loans to Mr. Harrison based on their personal relationship and Mr. Harrison's reputation as a successful real estate professional. (ECF No. 29-1 at 12.) Thus, according to Plaintiffs, the conduct of Mr. Harrison that led Mr. Johnson to continue to invest in his close friend's real estate ventures was Mr. Harrison's ability to promise and pay substantial returns to them with regard to two prior legitimate real estate developments.[7]  No evidence has been put forth in conjunction with the two loans at issue that Mr. Harrison made false representations or provided false or misleading financial statements <u>to Mr. Johnson</u> at the time the loans

---

[6] Plaintiffs state in their Reply that when Mr. Johnson made the loans at issue he had old financial statements on Mr. Harrison, from the early 2000s. (ECF No. 35 at 3.) Yet, Mr. Johnson does not assert that these old financial statements were deceptive or misleading. *Cf. Smith*, 2021 WL 5712154, at *6 (finding plaintiff raised sufficient disputes of material fact where, among other evidence, he claimed he continued to invest because the CEO provided him with misleading financial statements and projections showing the company to be in stronger financial position than it actually was). Rather, he purports to ask this Court to affirmatively conclude that they were deceptive or misleading because "[i]t is indisputable that at the time Mr. Johnson was loaning monies to Mr. Harrison, Mr. Harrison was knowingly using false financial statements prepared by his co-conspirators to defraud financial institutions." (*Id.*) For the reasons already articulated above, the Court declines to draw this conclusion.

[7] *See* ECF No. 32 at 4-7 (disputing the United States' characterization of these loans as straw purchases and setting forth why these two loans Mr. Johnson secured from the bank and then loaned to Mr. Harrison were legitimate transactions involving two properties).

10

were made, or that such representations were made or such statements were provided to Mr. Johnson by Mr. Harrison with the intent to defraud Mr. Johnson.

Consequently, the Court finds that Plaintiffs have failed to meet their burden of proof by a preponderance of the evidence to show that they suffered a theft loss meeting the elements of theft by false pretenses under South Carolina law. Accordingly, after reviewing the evidence in the light most favorable to Plaintiffs, the Court finds no genuine dispute of material fact and holds that Plaintiffs have failed to show they suffered a theft loss within the meaning of § 165.

## **CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiffs are not entitled to claim a theft loss deduction under § 165 for tax years 2021 and 2015. The Court denies Plaintiffs' motion for summary judgment (ECF No. 29) and grants the United States' cross-motion for summary judgment with respect to Plaintiffs' claim that they have suffered a theft loss under § 165 of the Internal Revenue Code (ECF No. 27).

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

September 18, 2023
Charleston, South Carolina